# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

WORLDCARE LIMITED CORPORATION,

        Plaintiff,

v.                                                      3:10-CV-1499(CSH)

WORLD INSURANCE COMPANY,

        Defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS COMPLAINT OR FOR TRANSFER OF ACTION

<u>HAIGHT</u>, Senior District Judge:

      Plaintiff WorldCare Limited Corporation (herein "plaintiff" or "WorldCare") brings the present action against World Insurance Company (herein "defendant" or "World") for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §1051, *et seq*. Specifically, WorldCare seeks injunctive relief and damages against World due to its alleged infringement of WorldCare's federally registered trademark and name, "WORLDCARE."

      Pending before the Court is defendant's Motion to Dismiss for Lack of Personal Jurisdiction Or, in the Alternative, Transfer of Venue to the District of Nebraska (Doc. #21). Defendant contends that its contacts with Connecticut are "attenuated at best" and therefore the exercise of personal jurisdiction over it "would offend traditional notions of fair play and substantial justice." Doc. #21, p. 1, para. 1. Alternatively, World requests transfer of the action to the United States District Court for the District of Nebraska in the interest of justice under 28 U.S.C. § 1404(a).

## I.   FACTS

Plaintiff WorldCare is a corporation incorporated under the laws of Bermuda with its principal place of business located at 7 Bulfinch Place, Boston, Massachusetts.  Doc. #1, p. 2 (¶ 5). During the last two decades WorldCare has been in the business of offering second opinion telemedicine services.  *Id.*, p. 1 (¶ 2).  These services are offered "as part of a benefit under health insurance plans" and "allow patients to access second medical opinions from top hospitals and medical institutions in the United States."[1]  WorldCare operates these services under two federally registered trademarks, "WORLDCARE" (Reg. Nos. 2118465 & 2220736), that it obtained from the U.S. Patent and Trademark Office ("PTO") in 1996.  *Id.*, p. 4 (¶ 18).  WorldCare contends that for almost two decades, it has "amassed significant goodwill and a strong reputation for quality in the health services market with its end user customers and strategic partners, including doctors, hospitals and insurance companies."[2]  *Id.*, p. 1-2 (¶ 2).

Defendant World is a Nebraska corporation with its principal place of business located at 11808 Grant Street, Omaha, Nebraska.  *Id.*, p.2 (¶6); *see also* Doc. #22, p. 1, para. 3.  Since 1903, World has conducted its business of "providing customers with high quality health insurance products and services under its 'World' house mark," including basic medical, major medical, comprehensive major medical, short-term major medical, and dental insurance."  Doc. # 22, p. 1,

_____

[1]WorldCare asserts that "[s]econd opinions include a confirmation or modification of an original diagnosis and treatment recommendations, including alternative treatments and/or therapies based upon the latest cutting-edge research."  Doc. #1, p. 3 (¶ 11).

[2]WorldCare  includes among its strategic healthcare partners:   "the Mayo Clinic, the Children's Hospital Boston, Dana-Farber/Partners Cancer Care, Brigham and Women's Hospital, Massachusetts General Hospital, U.C.L.A. Healthcare and Duke University Health System." Doc. #1, pp. 3-4 (¶ 12).

para. 3 to p. 2, para. 1; *see also* Declaration of Elizabeth Powell[3] ("Powell Dec.")(Doc. #23) ¶ 3.

As early as February of 2003, World adopted the designation "WorldCARE"[4] as a brand name for

use in connection with underwriting and administration of some of its health insurance, preferred

provider plans and health savings accounts.[5]  Doc. # 22, p. 2, para. 1; Powell Dec. ¶ 4.

World is licensed to do business in the State of Connecticut, but does not market or sell

insurance products in Connecticut. Powell Dec. ¶ 5.   Accordingly it has no insurance agents in

Connecticut.  *Id.*  World clarifies that it has never sold any insurance policies in Connecticut or

appointed any agents in Connecticut to sell insurance.  *Id.*  Although World maintains a website on

which prospective consumers may view various insurance plans (www.worldinsco.com), those plans

are not available for purchase online.[6]  *Id.* ¶ 6.  Rather, anyone interested in purchasing a policy must

contact an agent in the state in which he resides.  *Id.*   Furthermore, the website specifies the states

in which policies are sold and Connecticut is not listed.  *Id.*  The site further excludes Connecticut

---

[3]According to her affidavits, Powell is the "Senior Vice President, Health Markets" for World.    Doc. #23, ¶ 1, Doc. #35, ¶ 1.

[4]In 2005, World made an unsuccessful application to  the U.S. Patent and Trademark Office ("PTO") for a registered trademark in the product name "WorldCARE," under which World planned to sell insurance products. Doc. #1, p. 2 (¶ 3).  The PTO refused the application on the basis that the trademark would likely cause confusion with the marks already registered to WorldCare  (*i.e.*, consumers would likely become confused as to the source of the parties' respective products and services).  *Id.*; *see also* Doc. #1, Ex. D (copy of PTO's refusal).    World did not challenge the PTO's refusal, but rather abandoned its application.  Doc. #1, Ex. E (Notice of Abandonment).

[5]Throughout its pleadings, World has described its brand name as "WORLDCARE" (*i.e.*, in all capital letters).  Plaintiff's pleadings and World's website (www. worldinsco.com)  both describe World's brand name or service mark as "WorldCARE" on World's policies.  The Court adopts that version.

[6]World describes the site as "passive," as opposed to interactive, in that no purchases may be made online.  Doc. #22, p. 2, para 2 (citing Powell Dec. ¶ 6).

residents from viewing World's product information because all website visitors must identify their states of residence to gain access to policy information and there is no option to select "Connecticut." *Id.* & Ex. A, B.

World claims that it has issued 56,369 policies to residents throughout the United States, inclusive of its 29,596 WorldCARE policies.[7] *Id.* ¶¶ 7-8. Of the WorldCARE policies, only **three** are held by Connecticut residents and none of those policies was issued in Connecticut. *Id.* ¶ 7. Rather, each of the three policies is owned by a customer who moved to Connecticut **after** acquiring the policy.[8] *Id.*

WorldCare alleges that in early summer of 2009 it learned that World was selling health insurance products and services under the name "WorldCARE," thereby creating confusion in the marketplace. Specifically, WorldCare alleges that hospitals contacted WorldCare with questions about World's health plans, such as whether certain benefits were covered under the plans. Doc. #1, p. 7 (¶ 30). On August 9, 2009, WorldCare demanded that World cease and desist using the WorldCARE name in commerce, but World refused. Doc. #1, p. 7 (¶¶ 32, 35). World thus continues to use the name "WorldCARE" in connection with the sale of its goods and services. *Id.* (¶ 35).

---

[7]According to WorldCare, World also markets insurance products and services under the names of "HealthEquity," "World Insurance Company," and "World Insurance." Doc. #1, p. 5 (¶ 22); *see also* Doc. #1, Ex. B (excerpts from World Insurance website).

[8]World clarifies that it "maintains approximately 200 other insurance policies in Connecticut" but each such policy was acquired from a third party insurance company and none is a WorldCARE branded policy. Doc. # 22, p. 2, para. 3; Powell Dec. ¶ 8. World has issued 56,369 policies throughout the United States, inclusive of its WorldCARE branded policies. Doc. #22, p. 3-4; Powell Dec. ¶ 8.

## II.  __JURISDICTION__

This Court has "federal question" subject matter jurisdiction over plaintiff's trade infringement actions pursuant to 28 U.S.C. §§ 1331[9] and 1338[10] and 15 U.S.C. § 1121.[11]  As WorldCare sets forth in its Complaint, these claims patently arise under federal statute, the Lanham Act, 15 U.S.C. § 1051 *et seq.*

In considering defendant's motion to dismiss or transfer, the Court will address the issue of whether it has personal jurisdiction over the defendant in detail below.[12]  With respect to venue,

---

[9]28 U.S.C. § 1331 confers "federal question" jurisdiction upon the district courts as follows:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[10]28 U.S.C. § 1338 specifically confers original jurisdiction on the district courts in trademark cases such as the instant case:

> (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and **trademarks**. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

28 U.S.C. § 1338(a) (emphasis added).

[11]Section 1121, authorizing jurisdiction of federal courts in federal trademark actions, provides in relevant part:

> (a) The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this chapter [Chapter 22, entitled "Trademarks"], without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

15 U.S.C. §1121(a).

[12]Plaintiff asserts that the Court has personal jurisdiction over World under Conn. Gen. Stat. § 52-59b because World conducts business in Connecticut and is licensed with the State of Connecticut's insurance commission.  Doc. #1, p. 3 (¶ 8).

under 28 U.S.C. § 1391, venue in a "federal question" case is appropriate in any judicial district in which any defendant may be found; and a "defendant that is a corporation shall be deemed to reside in any judicial district in which it is *subject to personal jurisdiction* at the time the action is commenced." 28 U.S.C. § 1391 (b), (c) (emphasis added).[13] *See Divicino v. Polaris Indus.*, 129 F. Supp. 2d 425, 435 (D. Conn. 2001) ("Essentially section 1391(c) equates jurisdiction with venue for corporate defendants."). The Court must thus resolve the question of personal jurisdiction before addressing whether venue is proper in this District.

## III.    DISCUSSION

### A.    Personal Jurisdiction over Defendant World

Defendant World moves this Court to dismiss the present trademark action on the ground that this Court lacks personal jurisdiction over it pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Specifically, World claims that the U.S. District Court for the District of Connecticut may not properly exercise personal jurisdiction over World under Connecticut's long-arm statute, Conn. Gen. Stat. § 33-929(a), because World lacks the requisite "minimum contacts" with the state of Connecticut, the locus of this District. World claims that this Court's exercise of jurisdiction over it would violate the Fourteenth Amendment's constitutional guarantee of due

---

[13] Because "[n]o specific statute governs venue of trademark infringement claims," the provisions of the general venue statute [28 U.S.C. § 1391(b), (c)] are applicable. This means that matters of venue are determined with reference to where the claim arose, where the defendant resides, and, in the context of a motion for change of venue, the convenience of the parties and witnesses." 32 Fed. Proc., L. Ed. § 74:483 (West 2010) (footnotes omitted).

process, thereby offending the traditional notions of "fair play and substantial justice."[14]

Plaintiff WorldCare counters with the assertion that no exercise of long-arm jurisdiction is necessary where World consented to personal jurisdiction within Connecticut by obtaining a license to do business in the state and thus designating the Insurance Commissioner as its agent to receive service of process, pursuant to Conn. Gen. Stat. § 38a-25(b).   WorldCare contends that, by serving the Insurance Commissioner, personal service was proper and no constitutional due process analysis is required.

Given the parties' divergent approaches, the Court will examine each argument in turn before applying the proper analysis to the present facts.

### 1.      Rule 12(b)(2) - Standard of Review

Lack of personal jurisdiction is properly raised by a motion to dismiss.  Fed. R. Civ. P. 12(b)(2).[15]   *See Tomra of North America v. Environmental Products*, 4 F. Supp.2d 90, 91 (D. Conn. 1998); *In re Perrier Bottle Water Litigation*, 754 F. Supp. 264, 268 (D. Conn. 1990).  On a motion

---

[14]From the outset this Court notes that the parties take divergent approaches to determine whether personal jurisdiction exists.  World uses the traditional two-tiered approach, applying Connecticut's long-arm statute and engaging in a constitutional due process analysis. WorldCare, on the other hand, looks to Conn. Gen. Stat. §33-920 (regarding mandatory designation of the Insurance Commissioner as agent for service of process) to argue that World consented to jurisdiction within Connecticut, thereby rendering any due process analysis unnecessary and irrelevant.

[15]Rule 12(b)(2) instructs "How to Present Defenses":

Every defense to a claim for relief
in any pleading must be asserted in the responsive pleading if
one is required. But a party may assert the following defenses by
motion:
. . .
(2) lack of personal jurisdiction; . . . .

to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving jurisdiction over the defendant. *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003) (per curium); *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 240 (2d Cir. 1999); *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006 (1996)*; accord Solano v. Calegari*, 108 Conn. App. 731, 737-38, 949 A.2d 1257 (Conn. App. Ct. 2008), *cert. denied*, 289 Conn. 943, 959 A.2d 1010 (Conn. 2008).    Prior to discovery or an evidentiary hearing, plaintiff need only make a *prima facie* showing of jurisdiction through pleadings, affidavits, and supporting materials. *DiStefano v. Corozzi N. Am. Inc.*, 286 F.3d 81, 84 (2d Cir.2001); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001); *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir.1998).[16]

For purposes of a Rule 12(b)(2) motion, the Court must accept the well-pleaded factual allegations contained in plaintiff's complaint as true and resolve all factual disputes in plaintiff's favor. *Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d Cir. 2006).   Specifically,  all allegations are to

---

[16]*See also  A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993); *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir. 1990); *Metropolitan Life*, 84 F.3d at 566; *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).  *Accord Cogswell v. American Transit Ins. Co.*, 282 Conn. 505, 515, 923 A.2d 638 (2007) ("[w]hen a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction") (internal quotations omitted).

Although, in the absence of a hearing, a plaintiff need only make a *prima facie* showing that the court has personal jurisdiction over the defendant to defeat the motion, if challenged at trial, the plaintiff must eventually prove jurisdiction by a preponderance of the evidence.  *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 n.4 (2d Cir.), *cert. denied*, 384 U.S. 919 (1966). *See also Credit Lyonnais Sec. USA, Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir.1999) (eventually plaintiff must prove the jurisdictional facts by a preponderance of the evidence at either an evidentiary hearing or trial); *Marine Midland Bank N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981); 2A J. Moore*, Federal Practice*, ¶ 12.07[2.-2] n.4 (2d ed. 1988).

be construed in a light most favorable to the plaintiff and all factual disputes resolved in plaintiff's favor, regardless of controverting evidence submitted by the defendant. *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). *See also Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985) (when considering motion to dismiss for lack of personal jurisdiction, court must construe the pleadings liberally for the benefit of the plaintiffs); *CutCo Indus., Inc.*, 806 F.2d at 365 (court must resolve all factual disputes regarding personal jurisdiction in plaintiff's favor).

"In a federal question case where the defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules." *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121. The Lanham Act, 15 U.S.C. §1051, *et seq.*, under which plaintiff brings the present trademark infringement action, does not provide for national service of process. Therefore, the law of Connecticut, the place where the court sits, determines the jurisdictional reach of a Connecticut federal court sitting in a trademark infringement action. Fed. R. Civ. P. 4(k)(1)(a); [17] *see. e.g., Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104-05 (1987)).

---

[17]Rule 4(k)(1)(A) describes "Territorial Limits of Effective Service":

(1) *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:

(A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located; . . . .

Fed. R. Civ. P. 4(k)(1)(A).

## 2. __Jurisdiction Under Connecticut Law__

In order for this Court to exercise personal jurisdiction over defendant World, there must be an appropriate service of process, providing adequate notice of the claim, and an adequate basis for jurisdiction.   In the present case, World does not contest that service was proper.   Both parties agree that, on September 24, 2010,  by delivering true and attested copies of the process (summons and complaint) to Thomas R. Sullivan, Insurance Commissioner of the State of Connecticut, WorldCare effected proper service on World's duly authorized agent to accept service.   Doc. #11 (Return of Service); *see* also Conn. Gen. Stat. §§ 33-929(a) (registered agent of foreign corporation is corporation's agent for service of process), 38a-25(b), (d) (Insurance Commissioner is foreign insurer's designated agent for receipt of service of process).   The issue in this case is thus not the propriety of the service, but rather the effect of that service:   *i.e.*, whether receipt of service by a foreign insurance company is sufficient in and of itself to constitute consent to personal jurisdiction, thereby obviating the need for this Court to employ the constitutional test of due process.   The Court examines the conflicting views of the two parties.

## 3. __WorldCare's jurisdictional allegations – World consented to personal jurisdiction so no due process analysis is required__

WorldCare alleges that it has satisfied its burden to make a *prima facie* showing that this Court has personal jurisdiction over World based on the following facts.   World is a foreign insurer licensed to do business in Connecticut.   Pursuant to Conn. Gen. Stat. § 38a-25(b) & (d), World has irrevocably appointed the Connecticut Insurance Commissioner as its in-state registered agent for service of process.   WorldCare  served that agent in Connecticut on September 24, 2010 by hand with process in this action.    WorldCare thus concludes that World, having obtained a license to

conduct insurance business in the state and having been served via its registered agent in Connecticut, consented to suit in Connecticut. Because there has been instate service and consent, no "minimum contacts" analysis need or should be undertaken.

In support of its jurisdictional claims, WorldCare principally relies upon two cases, *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604, 617-18 (1990) and *Talenti v. Morgan and Brother Manhattan Storage Company, Inc.*, 113 Conn. App. 845, 855-56 (Conn. App. Ct. 2009). Turning first to *Burnham*, WorldCare summarizes the holding of the United States Supreme Court with the generalization that "[i]t is black letter law that courts have personal jurisdiction over defendants who are served in state." Doc. #29, p. 3 (Part I.A.); *see also Id.*, p. 2, para. 1. ("'minimum contacts' analysis does not apply where defendant served in state or consented to suit in state"). Furthermore, "[a]mong the most firmly established principles of personal jurisdiction is that the courts of a State have jurisdiction over nonresidents who are physically present in the state." *Id.*, pp. 3-4 (quoting *Burnham*, 495 U.S. at 610-11).

The second case relied upon by WorldCare, *Talenti v. Morgan and Brother Manhattan Storage Company, Inc.*, is a Connecticut Appellate Court decision upholding personal jurisdiction over a foreign corporation on the basis of personal service on its in-state executives. Plaintiffs Mr. and Mrs. Talenti filed a six-count complaint in Connecticut Superior Court against Mr. Talenti's former employer, Morgan and Brother Manhattan Storage Company ("Morgan") for damages arising from his allegedly wrongful termination.[18] Defendant Morgan, a foreign corporation with

---

[18]The Talentis' action alleged violations by Morgan of Conn. Gen. Stat. §§ 31-51x and 51(u), setting terms under which (1) an employer may require an employee to submit to a urinalysis drug test and (2) the use of such a test to determine any personnel action; the *prima facie* tort of invasion of privacy; intentional infliction of emotional distress; and loss of consortium.

its principal place of business in Connecticut, moved to dismiss for lack of personal jurisdiction on the ground that it was a foreign corporation and the Connecticut long-arm statute, Conn. Gen. Stat. 33-929(f), [19] did not properly apply to it because the plaintiffs were not residents of Connecticut or persons having a usual place of business in the state.   Plaintiffs countered that they had obtained personal jurisdiction over Morgan by personally serving its vice president at his Connecticut home and its executive vice president at its corporate headquarters in Greenwich.   Because they did not use the long-arm statute, they concluded that its residency requirements did not apply.    The trial court granted the motion for defendant, holding that the long-arm statute did apply.   Therefore, lacking residency in Connecticut, plaintiffs could not maintain an action against a New York corporation in Connecticut.

On appeal, the Connecticut Appellate Court overturned the trial court's dismissal, holding that there were two alternate bases for personal jurisdiction over WorldCare.[20]  First, most relevant to the plaintiff in the case at bar, "when a foreign corporation complies with the requisites of General Statutes § 33-920 by obtaining a certificate of authority and complies with the requisites of General

---

[19]Conn. Gen. Stat. § 33-929(f) provides, in relevant part:

 Every foreign corporation shall be subject to suit in this state, *by a resident of this state or by a person having a usual place of business in this state*, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows . . .

(Emphasis added).

[20]The second basis proffered by the court for exercising personal jurisdiction in *Talenti* was Conn.Gen.Stat. § 52-57(c), "which provides that in an action against a foreign corporation, service of process may be made on its vice president."  113 Conn. App. at 856.   When  plaintiffs served defendant's vice president at his home in Connecticut, personal jurisdiction was acquired by the court.  *Id*.

Statutes § 33-926 by authorizing a public official to accept service of process, it has consented to the exercise of jurisdiction over it by the courts of this state." 113 Conn. App at 854-55. Furthermore, "[a]s the defendant has consented to jurisdiction, the exercise of jurisdiction by the court does not violate due process. Therefore, the court does not need to undertake an analysis of any constitutional due process issues." *Id.* at 856 n.14.

### 4. Analysis of WorldCare's argument

#### a. *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604 (1990)

The Court is unpersuaded that *Burnham* is controlling in the present case. *Burnham*, as plaintiff concedes, involved in-state personal service on an *individual defendant*. It did not address service upon a foreign corporation through service on a registered agent for service. Furthermore, there was no plurality opinion written in *Burnham*, suggesting that perhaps the holding should be limited to the particular facts set forth therein.

Specifically, the defendant in *Burnham* was a New Jersey resident who was visiting his children in California when he was personally served with his estranged wife's divorce petition and court summons. Focusing on the fact that he was personally served within the forum state, the California courts rejected his argument that the Due Process clause of the Fourteenth Amendment prohibited them from asserting personal jurisdiction over him.

The United States Supreme Court unanimously affirmed, but wrote three separate opinions. Justice Scalia, with whom three Justices concurred, reasoned that jurisdiction based on physical presence alone accords with due process under a continuing tradition of this country's legal system. 495 U.S. at 608-19. Justice White, concurring with Justice Scalia but writing separately on this

issue, found that the in-state service rule was not shown to be "so arbitrary and lacking in common sense" as to violate due process. *Id.* at 628. Justice Brennan, with whom three Justices also concurred, applied a less rigid approach, finding that historical pedigree is merely one factor to consider in "establishing whether a jurisdictional rule satisfies due process." *Id.* at 629. He thus mandated an independent review "into the fairness of the prevailing in-state service rule." *Id.* Justice Stevens, in a special concurrence, noted his concern that the other Justices' opinions had an "unnecessarily broad reach" but concluded that the "historical evidence . . . identified by Justice Scalia," "the considerations of fairness identified by Justice Brennan, and the common sense displayed by Justice White" all combined to "demonstrate that this is, indeed a very easy case." *Id.* at 640.

Where there was no majority opinion in *Burnham*, no complete consensus on the rationale behind upholding personal jurisdiction, and no foreign corporation involved, it would be remiss of this Court to rely on *Burnham* to cursorily discard "minimum contacts" due process analysis to evaluate personal jurisdiction over foreign corporations. The United States Supreme Court has not specifically addressed whether registration in a state alone is sufficient to confer general personal jurisdiction in light of its holding in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Moreover, the lower courts who have encountered the issue have taken widely divergent approaches to resolve the issue.[21]

---

[21]For cases upholding the use of minimum contacts analysis, holding mere compliance with state statute regarding registration of corporation and service upon designated agent is not sufficient to confer in personam jurisdiction over foreign corporation*, see, e.g., Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182 (5th Cir. 1992) ("minimum contacts" analysis must be undertaken where the corporation has registered to conduct business in the state before personal jurisdiction may be asserted over a foreign corporation for a cause of action arising outside the forum), *cert. denied*, 506 U.S. 1080 (1993); *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745,

For example, the Eight and Fifth Circuits, who have addressed the issue, are split, having come to opposite and truly conflicting conclusions. *See, e.g., Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990) (under state law of Minnesota, a foreign corporation's appointment of agent for service of process equaled consent to personal jurisdiction, rendering due process analysis unnecessary);[22] *cf. Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182-83 (5th Cir.1992)

_____

748 (4th Cir. 1971) ( ("The principles of due process require a firmer foundation than mere compliance with state domestication statutes."), *cert. denied*, 404 U.S. 948 (1971); *Schreiber v. Allis-Chalmers Corp.*, 611 F.2d 790, 793-94 (10th Cir. 1979)*; Leonard v. USA Petrol. Corp.*, 829 F. Supp. 882, 886-91 (S.D. Tex. 1993); *Sandstrom v. Chemlawn Corp.*, 727 F. Supp. 676, 679-83 (D. Me. 1989), *aff'd*, 904 F.2d 83 (1st Cir. 1990); *Jones v. Family Inns of America, Inc.*, Civ. A. No. 89-0190, 1989 WL 57130, *1 (E.D. La. May 23, 1989); *In re Mid-Atlantic Toyota Antitrust Litigation*, 525 F. Supp. 1265, 1277-78 (D. Md. 1981), *modified on other grounds*, 541 F. Supp. 62 (D. Md. 1981).

For cases dispensing with the use of minimum contacts*, cf. Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199-1200 (8th Cir. 1990) (under state law of Minnesota, a foreign corporation's appointment of agent for service of process equaled consent to personal jurisdiction, rendering due process analysis unnecessary); *Bane v. Netlink, Inc.*, 925 F.2d 637, 640-41 (3d Cir. 1991) (registration constituted consent to suit on any cause of action and sufficient contacts to support exercise of general jurisdiction); *accord Sadler v. Hallsmith SYSCO Food Services*, Civil No. 08-4423 (RBK/JS), 2009 WL 1096309, at * 1-2 (D.N.J. April 21, 2009); *Continental Casualty Co. v. American Home Assurance Co.*, 61 F. Supp. 2d 128, 129-30 (D. Del. 1999); *Wheeling Corrugating Co. v. Universal Constr. Co., Inc.*, 571 F. Supp. 487, 488 (N.D. Ga. 1983); *In re FTC Corporate Patterns Report Litig.*, 432 F. Supp. 274, 286 (D.D.C. 1977).

[22]The holding in *Knowlton* may not actually be as broad as it would appear at first glance. The Eighth Circuit focused on consent to hold that by appointing a Minnesota agent for service of process, a foreign corporation had consented to the jurisdiction of Minnesota courts for any cause of action, whether or not that action arose out of the corporation's activities within the state. However, as the Eighth Circuit itself recognized, the Minnesota statute at issue, Minn. Stat. § 303.13, "Subdivision 1(1), provides simply that '[a] foreign corporation shall be subject to service of process ... [b]y service on its registered agent....' There are no words of limitation to indicate that this type of service is limited to claims arising out of activities within the state." 900 F.2d at 1200. This leaves open the possibility that the Eighth Circuit would be less inclined to find general personal jurisdiction where the forum state's statute specified that a foreign corporation's designation of an agent for service, making it amenable to suit within the forum

(registering an agent does not indicate consent to be sued in the state on any dispute with any party anywhere concerning any matter), *cert. denied*, 506 U.S. 1080 (1993).[23]

Unless or until the United States Supreme Court or the Second Circuit speaks directly to the issue, I concur with the Fifth Circuit's well-reasoned opinion in *Siemer v. Learjet Acquisition Corp.* (herein "*Learjet*"), in which the Court surmised:

> [N]othing in either plurality opinion [in *Burnham*] suggests that service on a corporation's registered agent "automatically subjects the corporation to jurisdiction. *Burnham*, to the extent it provides any guidance, reinforces [the defendant's] . . . position. Justice SCALIA noted "the continuous and systematic contact rule applied only to *corporations*, which *have never fitted comfortably in a jurisdictional regime based primarily upon de facto power over the defendant's person*." The second plurality's opinion reaffirms that all assertions of personal jurisdiction must satisfy the contacts and fairness requirements enunciated in *International Shoe*.
>
> *To assert,* as plaintiffs do*, that mere service on a corporate agent automatically confers general jurisdiction displays a fundamental misconception of corporate jurisdictional principles.* This concept is directly contrary to the historical rationale of *International Shoe* and subsequent Supreme Court decisions.

966 F.2d 179, 182-83 (5th Cir. 1992) (emphasis added) (citing *International Shoe*, 326 U.S. at 316-19; *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 444-48 (1952)).

The Fifth Circuit clarified in *Learjet* that it had not previously and would not then hold that

_____

state, is limited to claims arising out of in-state activities.    900 F.2d at 1199 (effect of foreign corporation's designation of agent for service "can be limited to claims arising out of in-state activities, and some statutes are so limited).    In other words, a foreign corporate defendant may only actually "consent" to what is described in the state's particular statute.  As the Eighth Circuit acknowledged, "[p]ersonal jurisdiction, unlike subject matter jurisdiction, is primarily concerned with fairness to individual parties."    *Id.*

[23]The Court notes that the Second Circuit has not squarely addressed this issue, but has continued to apply the traditional analysis of "minimum contacts" set forth in *International Shoe* when analyzing personal jurisdiction over foreign corporations.  *See, e.g.,  Chloe v. Queen Bee of Beverly Hills, LLC,*  616 F.3d 158, 164-65 (2d Cir. 2010).

in-state service on a designated corporate agent without more satisfies due process. Because plaintiffs' cause of action did not arise out of Learjet's contacts with the forum state of Texas, it was incumbent on plaintiffs to shown that Texas had acquired general jurisdiction over Learjet. Rightfully citing *Helicopteros Nacionales de Colombia, S. A. v. Hall,* 466 U.S. 408 (1984) as the pre-eminent Supreme Court case on general jurisdiction, mandating "systematic and continuous contacts," the Fifth Circuit concluded that Learjet's contacts with Texas were insufficient to satisfy the due process requirements of the Fourteenth Amendment. *Learjet,* 966 F. 2d at 181-82.

As in the instant case, defendant Learjet was a foreign corporation licensed to do business in the state at issue, namely Texas. Learjet, a Delaware corporation with its principal place of business in Kansas, had manufactured the aircraft that had crashed over Egypt (while en route from Greece to Saudi Arabia), resulting in the deaths of plaintiffs' decedents (the co-pilot and two passengers), thereby giving rise to plaintiffs' wrongful death action in the United States District Court for the Eastern District of Texas. Plaintiffs served Learjet's registered agent for service of process in Texas. The district court granted Learjet's motion to dismiss the case for lack of personal jurisdiction; and the Fifth Circuit affirmed, holding that the mere designation of a corporate agent for service of process does not alone establish general jurisdiction over a foreign corporation.[24]

---

[24]Describing the limited extent of Learjet's contacts with the forum of Texas, the Fifth Circuit noted that the relevant plane was based and serviced in Greece and operated by a Greek company. It was neither designed nor manufactured in Texas and had never been owned by a Texas resident. Furthermore, Learjet had no employees, officers, directors, interests in real property, or offices located in Texas. It designed, manufactured, and sold its aircraft in Kansas, its principal place of business. All sales were made from products warehoused in Kansas and Arizona. *Only one per cent* of Learjet's sales, consisting of spare parts, went to buyers with Texas addresses.

**b.** ***Talenti v. Morgan and Brother Manhattan Storage Company, Inc.*, 113 Conn. App. 845 (Conn. App. Ct. 2009)**

The Court next examines *Talenti v. Morgan and Brother Manhattan Storage Company, Inc.*, 113 Conn. App. 845, 968 A.2d 933 (Conn. App. Ct. 2009), the Connecticut case upon which WorldCare relies to justify personal jurisdiction over World. In *Talenti*, the Connecticut Appellate Court appears to dispense with due process analysis for foreign corporations licensed to do business in Connecticut in a simple footnote. 113 Conn. App. at 856 n.14. Prior to *Talenti*, the Connecticut Appellate Court had held that Conn. Gen. Stat. § 33-411(a) (now Conn. Gen. Stat. § 33-929(a)) made a foreign corporation amenable to service of process when it obtained authorization from the secretary of state to transact business within the state. *Wallenta v. Avis Rent-a-Car System*, 10 Conn. App. 201, 522 A.2d 820 (Conn. App. Ct. 1987). In *Wallenta*, however, the court also recognized that "*the next question to be resolved is whether the assertion of personal jurisdiction [over the defendant] offends due process.*" *Wallenta*, 10 Conn. App. at 208 (emphasis added). Because the trial court had granted the motion to dismiss without reaching "the issue of whether personal jurisdiction over the defendant corporation would offend due process on the basis of the facts," the court in *Wallenta* remanded to allow plaintiff "to establish facts sufficient to satisfy due process requisites." *Id.* at 208-09.

*Talenti* cites *Wallenta* but then summarily disposes of the due process analysis altogether in a footnote, pronouncing that service upon a foreign corporation's registered agent in the state equates with consent to jurisdiction and thus the court "need not undertake an analysis of any constitutional due process issues." *Talenti*, 113 Conn. App. at 856 n.14.

This Court, however, has doubts regarding the intended scope of such consent. As stated

*supra*, given this country's longstanding legal tradition of applying due process principles to evaluate personal jurisdiction over non-resident defendants, it seems unjust to expand consent to deem it binding where it would clearly violate due process. It is inherently unlikely that a foreign corporation transacting no business within a state would expect to be brought before a court of that state based solely on its certificate to do business there.[25]

Consent, by its very nature, constitutes "approval" or "acceptance." *See, e.g., Black's Law Dictionary* (9th ed. 2009) ("Agreement, approval, or permission as to some act or purpose, esp. given voluntarily by a competent person; legally effective assent."). "Consent" is meaningless unless its scope is defined. The law should sanction begging the core question: "Consent to or for what?" Granted, consent may be implied under certain circumstances, but the implication must be predictable to be fair. Expansive, non-explicit consent to being haled into court on *any claim whatsoever* in a state in which one lacks minimum contacts goes against the longstanding notion that personal jurisdiction is primarily concerned with *fairness*.[26]

---

[25]As the Fifth Circuit aptly distinguished in *Learjet*, "[a]pplying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another." *Learjet,* 966 F.2d at 182 (quoting *Ratliff*, 444 F.2d at 748).

[26]As the United States Supreme Court explained in *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982):

> The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. *The personal jurisdiction requirement recognizes and protects an individual liberty interest.* It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that "the maintenance of the suit ... not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L. Ed. 278 (1940).

(Emphasis added).

One may waive jurisdiction by not raising it or knowingly consenting to it, for example expressly by contract or implicitly in an agreement to arbitrate. *See, e.g., Insurance Corp of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982). However, one must question whether the legislature of Connecticut intended that whenever a foreign corporation, in this case a foreign insurer, obtains a license to do business in Connecticut, it knowingly consents to jurisdiction *for any claim whatsoever*, *regardless of the extent of its contacts with Connecticut*. It would seem much more likely that the Connecticut legislature contemplated consent to encompass consent to service of process and *to jurisdiction over matters which are constitutional under a due process analysis*.

The Connecticut Supreme Court has not squarely addressed the issue of whether personal jurisdiction arising from consent in these circumstances must comply with due process.[27] When, however, evaluating personal jurisdiction over a foreign corporation under Connecticut's long-arm

---

[27]The Connecticut Supreme Court denied *certiorari* for an appeal of *Talenti*. *See Talenti v. Morgan and Brother Manhattan Storage Co.*, 292 Conn. 908, 973 A.2d 105 (Conn. 2009). It thus never actually addressed the issue presented by footnote 14 - *i.e.*, whether it would be proper to dispense with due process analysis simply because a corporation has registered to do business within Connecticut and appointed an agent for service of process in the state. In denying *certiorari*, the Connecticut Supreme Court may have actually approved the appellate court's second prong for upholding personal jurisdiction over the defendant, namely personal in-state service on one of defendant's vice presidents at his home in Connecticut and on another such vice president at the defendant's corporate headquarters in Connecticut. *See* Conn. Gen. Stat. § 52-57(c) ("In actions against a private corporation, *service of process shall be made either upon* the president, *the vice president*, an assistant vice president, the secretary, the assistant secretary, the treasurer, the assistant treasurer, the cashier, the assistant cashier, the teller or the assistant teller or its general or managing agent or manager or upon any director resident in this state, or person in charge of the business of the corporation *or upon any person who is at the time of service in charge of the office of the corporation in the town in which its principal office or place of business is located*.") (emphasis added). Under those circumstances, the Connecticut Supreme Court may have denied *certiorari* on the ground that the result of the case was proper under the alternate or second prong and should thus not be overturned.

statute, the Connecticut Supreme Court has traditionally applied the due process analysis as the second step in evaluating personal jurisdiction. *See, e.g.*, *Knipple v. Viking Communications*, Ltd., 236 Conn. 602, 606, 611, 674 A.2d 426 (Conn. 1996); *see also Lombard Brothers, Inc. v. General Asset Management Co.*, 90 Conn. 245, 252-53, 460 A.2d 481 (Conn. 1983). In such cases, the court has addressed (1) whether the terms of the long-arm statute have been satisfied and then (2) whether the defendant had sufficient contacts with Connecticut to comport with due process.

Similarly, the Second Circuit and this District have adhered strictly to the standard of applying the "due process/minimum contacts" test as the second step whenever a foreign corporation has challenged personal jurisdiction. *See, e.g., Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 164-65 (2d Cir. 2010)*; Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995); *Metropolitan Life Insurance Co. v. Robertson-CECO Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *Mallon v. Walt Disney World Co.*, 42 F. Supp.2d 143, 145-46 (D. Conn. 1998); *Hardy v. Ford Motor Car*, 20 F. Supp. 2d 339, 341-42 (D. Conn. 1998); *Combustion Engineering, Inc. v. Drayton Insurance Brokers, Inc.,* No. 3:93CV1712 (JBA), 1996 WL 824983, at * 4 (Nov. 13, 1996); *Teleco Oilfield Services, Inc. v. Skandia Ins. Co.*, 656 F. Supp. 753, 758-59 (D. Conn. 1987).

In circumstances such as those present, in which the corporation had obtained a certificate of authority to transact business in Connecticut, this District has previously stated that Conn. Gen. Stat. § 33-929(a) is "merely a consent to service of process statute which is always subject to federal due process oversight." *Mednet, MPC Corp. v. United Healthcare*, No. 3:95cv2723 (AHN), 1996 U.S. Dist. LEXIS, at *14 (D. Conn. Aug. 15, 1996) ("section 33-411(a) is a consent to service statute only" and "the assertion of jurisdiction over a foreign corporation which complies with Connecticut's domestication statutes must ultimately comport with due process"); *accord Anderson*

*v. Bedford Assoc., Inc.*, No. 3:97 CV 1018, 1997 WL 631117, at *3 (D. Conn. Sept. 19, 1997)

("amenability to service of process is different from activities sufficient to subject the company to

personal jurisdiction").[28]  More recently, this District acknowledged that "[w]hile both *Mednet* and

*Anderson* call into question the import of *Wallenta*'s 'consent to jurisdiction' nomenclature, neither

decision altered the basic two-step approach actually employed in *Wallenta*." *Uses Manufacturing,*

*Inc. v. Rocky Mountain Institute*, 94 F. Supp. 2d 218, 222 (D. Conn. 2000).   Judge Arterton in *Uses*

thus concluded that, irrespective of whether the courts characterized the consent language in

*Wallenta* as "statutory consent to *service* as opposed to consent to *jurisdiction*, neither *Mednet* nor

*Anderson* materially alter *Wallenta*'s central holding that [Conn. Gen. Stat.] Section 33-929(a) may

provide a basis for jurisdiction over foreign corporations *subject to due process requirements*." 94

F. Supp. 2d at 223 (emphasis added).[29]  This Court concurs.

As one commentator noted:

> [I]t seems counterintuitive to allow general jurisdiction to rest simply on mandatory
> registration requirements. Even if registering corporations are fully apprised of the

---

[28]*See also Bogen v. Bonanno*, No. CV065001344S, 41 Conn. L. Rptr. 219, 2006 WL
1230052, at * 2-3 (Conn. Super. Ct.  April 13, 2006) (by being registered in Connecticut to
provide reinsurance, foreign insurance company made itself *amenable to service of process* on
the Insurance Commissioner; but insurance contract lacked sufficient connection with the state to
permit the trial court to exercise jurisdiction over insured's claim against defendant insurance
company) (emphasis added); *Xerox Corp. v. Axel Johnson Energy Development*, Nos. CV 92
0125804, CV 92 0126094, 1993 WL 107824, at * 4-5 (Conn. Super. Ct. April 2, 1993) (although
defendant had obtained certificate of authority to transact business within Connecticut, thereby
making itself amenable to personal jurisdiction, a second step was required to determine whether
the exercise of jurisdiction would violate constitutional principles of due process) (citing *Frazer
v. McGowan*, 198 Conn. 243, 246 (Conn. 1986)).

[29]The defendant had voluntarily waived any due process analysis in *Uses* in a hearing by
teleconference. The Court thus found Conn. Gen. Stat. § 33-929(a) a statutory basis for personal
jurisdiction over the defendant without having to perform a due process analysis.  94 F. Supp. 2d
at 220, 223.

jurisdictional implications of registration, and manifest express consent to general jurisdiction, it threatens to place them in the impossible position of virtually universal jurisdiction.

Lee Scott Taylor, *Registration Statutes, Personal Jurisdiction, and The Problem of Predictability*, 105 COL. L. REV. 1163, 1192 (June 2003). In the interest of fairness, a foreign corporation, or in this case alien insurer, that properly complies with the Connecticut registration statute should be deemed to have consented to personal jurisdiction only where such jurisdiction is otherwise constitutionally permissible. The court thus finds the well-reasoned opinions of this District (e.g., *Mednet*, *Anderson*, and *Uses*) and the Fifth Circuit (*Learjet*) persuasive.

5. **World's two-tiered approach: application of Connecticut's long arm statute and due process**

In support of its motion to dismiss for lack of personal jurisdiction, World argues that in order for a court to determine whether it has personal jurisdiction over a foreign corporation, such as World, it must conduct a two-tiered inquiry: (1) does the Connecticut long-arm statute, Conn. Gen. Stat. § 33-929(a) (2010),[30] reach the foreign corporation; and if so, (2) does the statute's

_____

[30]Conn. Gen. Stat. § 33-929(a), entitled, "Service of process on foreign corporation," states:

> (a) The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice or demand required or permitted by law to be served on the foreign corporation. When the registered agent is other than the Secretary of the State and his successors in office, service may be effected by any proper officer or other person lawfully empowered to make service by leaving a true and attested copy of the process, notice or demand with such agent or, in the case of an agent who is a natural person, by leaving it at such agent's usual place of abode in this state.

Moreover, pursuant to Conn. Gen. Stat. § 33-920, "[n]o insurance, surety or indemnity company "shall transact business in this state until it has procured a license from the Insurance Commissioner." *See Conn. Gen. Stat*. §§ 33-920, 38a-41. All "foreign and alien" insurers who

jurisdictional reach as applied to that foreign corporation meet the "minimum contacts" requirement to satisfy constitutional due process, as set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[31]

World concedes in its brief that even if § 33-929(a), Connecticut's long-arm statute, were to apply in this case, World is encompassed by it in that it is a company registered to do business in Connecticut and has a certificate to do business. Doc. #22, pp. 4-5 (citing *Wallenta v. Avis Rent-a-Car System*, 10 Conn. App. 201 (1987), for the proposition that where a foreign corporation complied with Connecticut's long arm statute, Conn. Gen. Stat. § 33-411(a) (currently § 33-929(a)), it was deemed to have "consented to jurisdiction by the courts of this state").

World then focuses on the second test, the "minimum contacts" prong of *International Shoe*, 326 US. at 316, to argue that it does not have the requisite minimum contacts with Connecticut to justify the exercise of personal jurisdiction. First, World argues there is no general jurisdiction over World in Connecticut because it possesses no "continuous and systematic general business contacts" in the state. *See Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).[32] World neither markets nor sells any of its insurance policies in Connecticut. Powell Dec. ¶ 5. There are approximately two hundred policies that World currently *manages* in the state, but most of these were "acquired from third party insurer companies" long after the policies were issued. *Id.* ¶ 8, *see*

---

apply for such a license are deemed to have appointed the Insurance Commissioner as agent for receipt of service of process. *Id.* § 38a-25(b).

[31]*See also Best Van Lines, Inc. v. Walker*, 490 F.3d, 242-43 (2d Cir. 2007); *Fuehrer v. Owens-Corning Fiberglas Corp.*, 673 F. Supp. 1150, 1153 (D. Conn. 1986).

[32]General jurisdiction exists where the defendant is domiciled in the forum or engages in activities in the forum that are "substantial" or " continuous and systematic." *Helicopteros*, 466 U.S. at 414-16.

*also* Doc. #22, p. 5, para. 3. Of the two hundred World policies managed within the state, only *three* are WorldCARE branded policies; and those policies were issued outside of the state to consumers who eventually moved to Connecticut. *Id.*; Powell Dec. ¶ 7; Doc. #35 (Supplemental Declaration of Elizabeth A. Powell ("Supp. Powell Dec.")) ¶ 2. Furthermore, "[p]ursuant to company practice, the WorldCARE mark is only used in connection with the initial marketing and sale of any policy [; and] after the policy is issued, no further communications with the policy holder, including identification cards, premium notices, claims correspondence and letters, use the WORLDCARE mark." Supp. Powell Dec. ¶ 3.

World argues that, given the few contacts it has with Connecticut, this Court may not exercise general jurisdiction over it pursuant to the *Helicopteros* standard. Moreover, any such exercise of general jurisdiction would be contrary to the public policy of Connecticut. Doc. #33, p. 6, para 1 (citing *Mednet, MPC Corp. v. United Healthcare, Inc.*, No. 3:95cv2723(AHN), 1996 US Dist. LEXIS 22338, at * 15-17 (D. Conn. Aug. 14, 1996)).

Similarly, World contends that this Court may not exercise specific jurisdiction over World as a foreign defendant because the present trademark action does "not arise out of or relate to" any of World's contacts with the forum.[33] *Helicopteros*, 466 U.S. at 414 n. 8; *Mallon v. Walt Disney World*, 42 F. Supp. 2d 143, 145 (D. Conn. 1998). Specifically, World only maintains *three* WorldCARE branded insurance policies in Connecticut and only does so because the holders of those policies moved to Connecticut. World does not market or sell any insurance policies in

---

[33]The exercise of specific jurisdiction comports with due process when a defendant has undertaken activity in which it has purposefully availed itself of the privilege of conducting business in the forum state, thereby invoking the benefits and protections of its laws. If the plaintiff's claim arises out of forum-related activities, the exercise of jurisdiction is reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 & 476-77 (1985).

Connecticut and thus has not directed any activity into Connecticut. Powell Dec. ¶ 5. Furthermore, plaintiff WorldCare does not allege that World engaged in any activity in Connecticut that gave rise to the present trademark infringement claim. In sum, in the absence of any causal link between World's activities in Connecticut and the plaintiff's alleged harm, there can be no specific jurisdiction.

Lastly, World applies the general "due process" test of determining whether the exercise of personal jurisdiction would comport with "fair play and substantial justice" and concludes that it would not. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).[34] World examines a list of factors set forth by the Supreme Court in *Asahi* to determine that this Court's exercise of personal jurisdiction over World would offend the traditional notions of fair play and substantial justice, as described in *International Shoe*. First, World argues that since it is a Nebraska-domiciled company that neither solicits nor sells its products or services in Connecticut, it would be burdensome for World to defend the present trademark action in Connecticut. Second, World asserts that, since plaintiff is not a Connecticut company, it has no apparent special interest or convenience in litigating in Connecticut. Third, and likewise, Connecticut has little interest in adjudicating the matter since no WorldCARE policies are sold or marketed within its borders. Fourth, judicial efficiency will not be fostered if the case is litigated in Connecticut because none of the witnesses or evidence will likely be located in Connecticut. Doc. #22, p. 7, para. 1 (*citing Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F. 3d 560, 568 (2d Cir. 1996)).

_____

[34]Such factors include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies. *Asahi Metal Indus. Co.*, 480 U.S. at 113.

6. **Constitutional Requirement of  Due Process**

   a. **Minimum Contacts**

I find that, in designating Connecticut's Insurance Commissioner as its agent for service, World consented to receipt of service and jurisdiction over all matters which would not violate the Due Process clause of the Fourteenth Amendment.   I thus agree with World that the application of due process analysis is justified.

Both parties agree that service was proper on World when WordCare served the Insurance Commissioner.   See Conn. Gen. Stat. §§ 38a-25(b), (d).   The fact that service is proper does not, however, resolve the issue of whether plaintiff has established a sufficient basis for this court to exercise personal jurisdiction over World.   "Whether jurisdiction in the sense of due process exists depends upon concepts of 'fairness' and 'convenience' and not upon mere compliance with procedural requirements of notice, nor even corporate 'presence' within the state." *Learjet*, 966 F.2d at 181 (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).  The Court must therefore evaluate whether the exercise of jurisdiction over World violates due process.

As the Second Circuit recently held, two components to the due process analysis are undertaken to determine whether a foreign corporation is subject to the court's jurisdiction for commercial activity involving the forum state: "(1) the minimum contacts inquiry and (2) the reasonableness inquiry." *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 171 (2d Cir. 2010) (citing *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37-38 (2d Cir.2001)).   "In determining the strength of the contacts under . . . the Due Process Clause, we look to the totality of Defendants' contacts with the forum state." *Chloe,* 616 F.3d at 164.

Under the principles set forth in *International Shoe* and its progeny, it is clear that World

lacks sufficient contacts with Connecticut to satisfy due process requirements.  As World asserted without contradiction in its memoranda and affidavits of Senior Vice President Powell, it has extremely attenuated contacts with this state.  Although licensed to do business in Connecticut, World does not market or sell insurance products in Connecticut.  Powell Dec. ¶ 5.   It has no insurance agents in Connecticut; and, in fact, has never sold insurance policies in Connecticut.[35] *Id.* World's  website does not list Connecticut as a state where it does business or even allow access by Connecticut residents into the portion of the site that gives information about policies.[36]  *Id.,* Ex. B. (showing website's drop-down menu of state options for access to policies, which excludes Connecticut).

Out of World's 59,369 insurance policies outstanding in the United States, only three bearing the WorldCARE mark are outstanding in Connecticut.[37]  Powell Dec. ¶¶ 7-8.  None of the three policies was either sold or issued in Connecticut.  *Id*. ¶ 7.

World's most substantial connection with Connecticut is that it obtained a certificate of authority to sell insurance here.  Powell Dec. ¶ 5.  However, it has never exercised that privilege. *Id.* As the Fifth Circuit observed, while "being qualified to do business may on its face appear to be

---

[35]There is also no evidence that World maintains an office, has any employees, or owns any real estate in Connecticut.

[36]On World's  website, www.worldinsco.com, World provides prospective customers with information about various insurance plans it offers.  The plans are not available for purchase on the website and must be purchased through an agent.  Powell Dec. ¶ 6.  Furthermore, World explicitly lists the 33 states where, as of July 1, 2009, World offers products.  *Id.*  Connecticut does not appear in that list.  (World acknowledges that it is *authorized*, however, to do business in all states except Alaska, Massachusetts and New York.)

[37]World has clarified that it does have 200 policies that it manages in Connecticut. However, these policies were acquired from third party insurance companies and are not branded with the WorldCARE mark.  *See* Powell Dec. ¶ 8.

significant, it 'is of no special weight' in evaluating general personal jurisdiction." *Learjet*, 966 F.2d at 181 (quoting *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir.), *cert. denied*, 404 U.S. 948 (1971)). After all, "[a]pplying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another." *Learjet,* 966 F. 2d at 182 (quoting *Ratliff*, 444 F.2d at 748). World's acquisition of a certificate of authority to do business in Connecticut is not jurisdictionally determinative in a case where, as here, where World never actually transacted business in Connecticut.

In sum, given World's meager contacts with Connecticut, World lacks the requisite "minimum contacts" under *International Shoe*. These contacts thus provide neither general jurisdiction ( *i.e.*, there are no allegations or evidence of continuous or systematic business by World in the state);[38] nor specific jurisdiction (*i.e.*, there are no alleged actions or misconduct by World in Connecticut giving rise to WorldCare's trademark claim).[39]

―――――――――――――――

[38] As the Second Circuit explained recently in *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010), for purposes of the "minimum contacts" inquiry, "a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984)). In contrast, a court's general jurisdiction "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Chloe*, 616 F.3d at 164 (citing *Helicopteros*, 466 U.S. at 414-15, n.8 & 9).

[39] The crux of WordCare's trademark infringement claims is that: (1) World "used and continues to use in commerce reproductions, copies and colorable imitations of the Marks in connection with its goods and services, which is likely to cause confusion, or to cause mistake, or to deceive, and comprises an infringement of the Marks;" and (2) World's "conduct constitutes a false designation of origin," which is likely to cause consumers to be confused that World's services are affiliated with WorldCare. Doc. #1 at ¶¶ 39, 43. World has not, however, sold any insurance policies in Connecticut or to Connecticut residents while they were resident in Connecticut. As World avers, the WorldCARE "mark is only used in connection with the initial

### b.     **Reasonableness Inquiry**

Even had World possessed the requisite "minimum contacts" with Connecticut, personal jurisdiction over World would fail the "reasonableness test" because such jurisdiction does not comport with the "traditional notions of fair play and substantial justice" under *International Shoe,* 326 U.S. at 154.     In analyzing whether it is reasonable to exercise personal jurisdiction in the circumstances of a particular case, the Supreme Court has held that courts must evaluate the following factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987); *see also Chloe*, 616 F.3d at 164-65 (discussing factors); *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 83 (2d Cir.1993) (same).[40]

Applying the Supreme Court factors set forth in *Asahi*, the Court first examines the burden that litigating in Connecticut will impose on defendant World.     World has made clear that its necessary witnesses, Senior Vice President Powell and Tim Thompson, Agent Field Communications Manager, both reside in Nebraska. Powell Dec. ¶¶ 9-10. Furthermore, all of

---

marketing and sale of any policy." Supp. Powell Dec. at ¶ 3. Therefore, none of the alleged misconduct giving rise to WorldCare's claim occurred within Connecticut.

[40]Thus, even when the exercise of jurisdiction is favored because the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, jurisdiction may be defeated if the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloe*, 616 F.3d at 165 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

World's documents are located either in its company headquarters in Omaha, Nebraska, or in the headquarters of its parent company, American Enterprise Group, in Des Moines, Iowa. *Id.*, ¶¶ 10-11. Both locations are many miles from Connecticut's borders. To travel to New Haven, Powell and Thompson, who both work at World's headquarters in Omaha, Nebraska, would be required take a flight and the total trip would take approximately 8-10 hours. *Id.* at ¶ 10. Similarly, all relevant World documents and records, which are located in Omaha, Nebraska, and/or Des Moines, Iowa, would have to be transmitted, transported or shipped to New Haven. Although these are times in which jet travel and bulk or electronic document shipping are everyday events, these actions are both time-consuming and expensive. Litigating in Connecticut may thus prove burdensome for World.

Second, Connecticut has no notable interest in litigating this claim. This case does not concern matters of Connecticut law, but rather federal trademark infringement statutes. *See Lanham Act*, 15 U.S.C. § 1501, et seq. Furthermore, according to the record, the case involves insurance policies that were all marketed and issued outside the state's borders. As previously noted, the only three WorldCARE branded policies held by Connecticut residents were brought into the State after purchase.[41] Moreover, these three WorldCARE branded policies comprise an infinitesimal percentage (approximately .0101%) of the 29,569 WorldCARE branded policies issued by World throughout the United States.[42]

---

[41]These three WorldCARE branded policies comprise an infinitesimal percentage (approximately .0101%) of the 29,569 WorldCARE branded policies that were issued by World throughout the United States.

[42]When minimum contacts have been established, the interests of the plaintiff and the forum will often justify even the most serious burdens placed on a foreign defendant. *Asahi*, 480 U.S. at 114. Conversely, where such contacts are lacking, burden on the defendant is a viable concern for the Court.

Also of note is the fact that plaintiff is a foreign entity, a Bermuda corporation with its principal place of business located in Massachusetts. Connecticut therefore has no "manifest interest" in providing WorldCare, a non- resident, with a convenient forum for relief from injuries caused by an out-of-state actor. *See Burger King Corp*., 471 U.S. at 473.

Third, plaintiff WorldCare has established no significant convenience to itself in litigating in Connecticut. As stated *supra*, WorldCare is a Bermuda corporation with a principal place of business in Massachusetts. Granted, as WorldCare points out, Massachusetts is closer to Connecticut than it is to Nebraska. However, there are at least a dozen states that are closer in proximity to Massachusetts than Nebraska in which World admittedly sells its insurance products.[43] *See* Powell Dec. Ex. B (listing thirty-three states where World insurance policies are sold). It is likely that World actually marketed and/or sold the WorldCARE branded policies at issue in some or all of those states. Thus, although the plaintiff's choice of forum is "entitled to substantial consideration," *In re Warrick*, 70 F.3d 736, 741 (2d Cir. 1995), where WorldCare bases its preference solely on Connecticut's proximity to Massachusetts, I find this argument lacking sufficient weight to uphold its choice.[44]

---

[43]These states include Delaware, Georgia, Illinois, Indiana, Iowa, Michigan, Missouri, North Carolina, Ohio, Pennsylvania, South Carolina, and Tennessee. Of these, Pennsylvania is closest to Massachusetts.

[44]WorldCare presupposes that personal jurisdiction over World is proper in Connecticut and merely argues that because World "may not be subject to personal jurisdiction in the District of Massachusetts," it is "forced to file suit in Connecticut, the closest such district where "World Insurance resides." Doc. #29, p. 8, para. 2. WorldCare makes this argument in the context of opposing World's alternative motion to transfer this action to the District of Nebraska pursuant to 28 U.S.C. § 1404(a). Aside from a general argument regarding "proximity," it does not detail specifically how it would be inconvenienced by a transfer. The Court further notes that if the inconvenience relates primarily to WorldCare's Connecticut counsel, such a consideration is an inappropriate matter on a motion to transfer. *See, e.g., Solomon v. Continental American Life*

Fourth, the Court finds that the interstate judicial system's interest in obtaining the most efficient resolution of the controversy is no better served in Connecticut than in another forum. In evaluating this factor, "courts generally consider where witnesses and evidence are likely to be located." *Metropolitan Life Ins. Co.,* 84 F.3d at 574. The Court thus notes that World contends that no relevant witnesses and documents are located in Connecticut; and WorldCare offers no countering statement.

Lastly, examining the shared interest of the several States in furthering fundamental substantive policies, I find that Connecticut's interest is no greater than that of another state in enforcing national trademark laws. Trademark infringement is of national concern, involving federal law, the Lanham Act, 15 U.S.C. § 1051 *et seq.* There is no particular reason that this trademark action would be more efficiently resolved in this District than in another. Rather, there are no known relevant witnesses or documents located in Connecticut; and none of the alleged misconduct giving rise to trade infringement appears to have occurred in Connecticut.[45] In sum, there is no controverted question which depends on an event that occurred within this state.

In sum, evaluating all reasonableness factors in this case, I find that it would not be reasonable to exercise personal jurisdiction. World's paltry contacts with Connecticut, when coupled with the factors set forth in *Asahi*, combine to confirm that the exercise of personal jurisdiction in this State over World would not comport with the traditional notions of fair play and

_____

*Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973); *Chicago, Rock Island and Pacific R. R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955), *cert. denied*, 350 U.S. 822 (1955).

[45]Although three WorldCARE policies remain outstanding in Connecticut, World's counsel has clarified that the WorldCARE mark "is only used in connection with the initial marketing and sale of any policy." Supp. Powell Dec. ¶ 3. Afterward, no communications with the Connecticut resident policyholders use the WorldCARE mark. *Id.*

substantial justice.  While there appears to be a somewhat surprising absence of appellate authority

on the point,  I conclude without difficulty that the procedural provisions of Connecticut's authorized

agent service statute cannot trump *International Shoe*'s substantive principles of fairness and justice,

grounded as they are in the United States Constitution.  It inexorably follows that this Court does not

have jurisdiction over the person of Defendant World Insurance Company.

      Lacking personal jurisdiction over defendant World, under most circumstances, this Court

would now dismiss the action.  World, however, has moved in the alternative for transfer to the

United States District Court for the District of Nebraska.

**B.**      **World's Alternative Motion to Transfer**

      **1.**      **Transfer pursuant to § 1404(a)**

      Defendant has alternatively requested transfer of this action to the United States District

Court for the District of Nebraska pursuant to 28 U.S.C. § 1404(a), in the interests of justice and for

the convenience of the parties and witnesses.[46]  Transfer under this section, however, assumes that

venue is proper in the court where the action is initially filed and that the court has jurisdiction over

the defendant.   28 U.S.C. § 1391(c)  states that, for venue purposes, "a defendant that is a

corporation shall be deemed to reside in any judicial district in which it is subject to personal

jurisdiction at the time the action is commenced."  Having determined that this Court lacks personal

jurisdiction over the defendant, World does not reside in Connecticut within the meaning of 28

---

[46]Section 1404(a), entitled "[c]hange of venue," provides that  "[f]or the convenience of
parties and witnesses, in the interest of justice, a district court may transfer any civil action to any
other district or division where it might have been brought."  28 U.S.C. § 1404 (a).

U.S.C. § 1391(c) and thus venue in this District is improper.[47]

Since the Court has held that World is not subject to personal jurisdiction in this District, venue does not lie here. However, cognizant of World's desire to transfer the case to the District of Nebraska, the Court will construe its motion to transfer as one "in the interest of justice" pursuant to 28 U.S.C. § 1406(a) (allowing transfer "in the interest of justice" when venue is improper). [48]

## 2.     Transfer pursuant to § 1406(a)

Under 28 U.S.C. § 1406(a), a district court faced with an improperly filed case has the option of either dismissing the case or transferring it to "any district in which it could have been brought" if the transfer is "in the interest of justice." *See, e.g., Carson Optical, Inc. v. Telebrands Corp.*, No. 3:06CV821(CFD), 2007 WL 2460672, at * 5-6 (D. Conn. Aug. 27, 2007) (transfer under § 1406(a), rather than dismissal, held to serve the interest of justice); *Bunn v. Gleason,* 462 F. Supp. 2d 317, 319-21 (D. Conn. 2006) (same); *U.S. ex rel. Smith v. Yale University*, No. 3:02CV1205(PCD), 2006 WL 1168446, at *3 (D. Conn. April 28, 2006) (same); *Sutton v. Rehtmeyer Design Co.*, 114 F. Supp. 2d 46, 49 (D. Conn. 2000) (appropriate authority for transferring a case when there is no proper venue in the transferor court is 28 U.S.C. § 1406). Rather than dismissing this case for lack

---

[47]A court may transfer a case pursuant to § 1404(a) if it has subject matter jurisdiction and proper venue. *See, e.g., RMS Titanic, Inc. v. Geller*, No. 3:99-CV-2401(JCH), 2000 WL 306997, at *3 n.6 (D. Conn. Jan. 10, 2000) ("[t]ransfer under § 1404(a) is possible only if venue is proper in the original forum and federal jurisdiction existed there") (quoting 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3844, p. 332 (2d ed.1986)).

[48]28 U.S.C. § 1406(a) states:

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

of personal jurisdiction over World, the Court thus has the option to transfer it pursuant to § 1406(a).

The Supreme Court and Second Circuit have held that a district court has the power to transfer a case to another judicial district, whether or not the transferring court has personal jurisdiction over the defendant. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n. 9 (2d Cir. 2000) (Supreme Court has "made clear that a district court lacking both personal jurisdiction and proper venue could transfer under section 1406(a) to a district where both defects were avoided") (citing *Goldlawr*, 369 U.S. at 466), *cert. denied*, 531 U.S. 824 (2000); *Volk Corp. v. Art-Pak Clip Art. Service,* 432 F.Supp. 1179, 1181 & nn. 4-5 (S.D.N.Y. 1977) (declining to elect between reliance on § 1404(a) or § 1406(a) in making transfer because the court "has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in [the] district, if a transfer would be in the interest of justice").

"Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).    A district court may transfer a case on a motion by either party or *sua sponte* on its own motion.  *See Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371-72 n. 3 (2d Cir.1966) ("where the motion asks only that the suit be dismissed, the court may properly, *sua sponte*, order it transferred [pursuant to 28 U.S.C. § 1406(a) ]").

In general, on a motion to transfer, the movant has the burden of justifying transfer of venue. *Paragon Realty Group LLC v. Lecates,* No. 3:06 CV 846(CFD),  2007 WL 419617, at *4 (D. Conn.

Feb. 5, 2007); *see also Carson Optical, Inc.,* 2007 WL 2460672, at * 2 ( party seeking transfer bears the burden of proving that it is appropriate and the court must weigh factors of convenience and fairness to assess the motion ); *Kodak Polychrome Graphics, LLC*, No. 3:05-CV-330(MRK), 2005 U.S. Dist. LEXIS 23359, at *2-3 (D. Conn. Oct. 7, 2005) (movant has burden to make a clear and convincing showing that transfer should be made); *O'Brien,v. Okemo Mountain, Inc.,* 17 F. Supp. 2d 98, 104 (D. Conn. 1998) (movant has burden to show relevant factors "strongly favor transfer").

Transfer is favored to remove procedural obstacles including the lack of personal jurisdiction. *Minnette*, 997 F.2d at 1027 ("functional purpose of 28 U.S.C. § 1406(a) is to eliminate impediments to the timely disposition of cases and controversies on their merits"); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir.1978) (transfer held in the interest of justice where one result was that it "would apparently enable appellant to obtain personal jurisdiction over some or all of the defendants"); *Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C. Cir.1983) ( transfer is favored to remedy "the lack of personal jurisdiction, improper venue and statute of limitations bars" and thereby permit adjudication on the merits); *Danuloff v. Color Ctr.*, No. 93-CV-73478-DT, 1993 WL 738578, at *6 (E.D. Mich. Nov.22, 1993) ("[T]he interest of justice is served when a case is transferred from a forum where there is a difficult question of personal jurisdiction to a district in which personal jurisdiction is clearly established.").

Preliminarily, the Court notes that jurisdiction and venue would be proper in the proposed transferee court, the District of Nebraska. Transfer to Nebraska would cure the problem of personal jurisdiction over World. As a Nebraska corporation with its principal place of business located in Nebraska, World resides in Nebraska, concedes that personal jurisdiction is proper there, and invites this transfer. Federal question subject matter jurisdiction over plaintiff's trademark infringement

claim would remain intact in Nebraska. *See* 28 U.S.C. §§ 1331, 1338. Furthermore, venue would

be proper in Nebraska where corporate defendant World resides. *See* 28 U.S.C. § 1391. In sum,

this action could have been brought in the proposed transferee District of Nebraska. *See* 28 U.S.C.

§ 1406(a) (allowing transfer "to any district or division in which it could have been brought").

The Court next turns to the factors to be weighed when deciding whether to transfer:

(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant

documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the

locus of operative facts, (6) the availability of process to compel the attendance of unwilling

witnesses, [and] (7) the relative means of the parties.[49] *D.H. Blair & Co., Inc. v. Gottdiener,* 462

F.3d 95, 106-07 (2d Cir.2006).[50] With respect to these factors, "district courts have broad discretion

in making determinations of convenience ... and notions of convenience and fairness are considered

on a case-by-case basis." *Id.*; *Paragon Realty Group LLC* , 2007 WL 419617, at *4.

A review of the facts in this case makes clear that transfer, rather than dismissal, would serve

"the interest of justice." First, plaintiff's choice of forum, although usually afforded significant

deference, is "substantially diminished" where, as here, the corporate plaintiff did not file suit in its

home base or state of incorporation. *Lever Brothers Co. v. Procter & Gamble Co.*, 23 F. Supp.2d

---

[49]The relative means of the parties have not been addressed or proven by either party, both corporations of considerable size. This appears to be a neutral factor. This Court's familiarity with governing law is also neutral, where the law to be applied is the uniform federal trademark infringement law.

[50]*See also A Slice of Pie Productions, LLC v. Wayans Bros. Entertainment,* 392 F. Supp. 2d 297, 305 (D. Conn. 2005) (enumerating factors to consider on transfer motion as "convenience of the parties and witnesses, availability of process to compel unwilling witnesses to testify, location of the relevant documents, locus of the operative facts, relative means of the parties, the forum's familiarity with governing law, plaintiff's choice of forum, and the interests of justice").

208, 211 (D. Conn .1998) (dismissing action for improper venue because plaintiff was not a resident of the forum state, no events relating to the case occurred in Connecticut, few witnesses existed there, and only counsel resided in the state). *Moreover,* "when a plaintiff's claims are nationwide – as they are in this trademark infringement action – the mere fact that a plaintiff selects one forum over others does not, without more, entitle the plaintiff's choice to controlling weight." *Zinky Electronics, LLC v. Victoria Amplifier Co.,* No. 09-cv-26 (JCH), 2009 WL 2151178, at * 4 (D. Conn. June 24, 2009). *See also Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615, 617 (S.D.N.Y. 1995) (presumption in favor of plaintiff's choice of forum fails to apply where there is 'little material connection' between the chosen forum and the facts or issues of the case). WorldCare is a Bermuda corporation with its principal place of business in Massachusetts. It has no known ties with Connecticut and has made no detailed argument regarding any particular convenience to litigating here, aside from the assertion that its headquarters, located in Massachusetts, is closer to Connecticut.

Second, the convenience of the known witnesses favors Nebraska. *See, e.g.*, *Intria Corp. v. Intira Corp.*, No. 00 CIV. 7198(AGS), 2000 WL 1745043, at * 3 (S.D.N.Y. Nov. 27, 2000) ("convenience of witnesses may be the most important factor" in the transfer analysis). The two key witnesses named by World in the Powell Declaration, Thompson and Powell, both reside in Omaha, Nebraska. WorldCare, on the other hand, has named no specific witnesses or where they reside.[51]

Third, World asserts that all of its documents are either at its headquarters in Nebraska, or

---

[51]WorldCare merely states that, if the case were transferred to Nebraska, its employees would be required to fly to Nebraska and that would be "more expensive" than driving to Connecticut. Doc. #29, p. 10, p. 2. The WorldCare witnesses' identities and states of residence are unknown.

at those of its parent corporation in Iowa. Granted, in the age of computers and faxes, document location is seldom determinative. *Cody v. Ward*, 954 F. Supp. 43, 47 n.9 (D. Conn. 1997) ("widespread use of facsimile equipment and overnight mail" reduce the burden on nonresidents of litigating in distant state). Nonetheless, as one additional factor, the location of the relevant documents weighs in favor of Nebraska.

Fourth, the overall convenience of the parties appears to favor Nebraska as the location of the witnesses, documents, and operative facts giving rise to the claim. Any particular inconvenience to WorldCare by litigating in Nebraska has not been established.

Fifth, regarding the locus of operative facts, it does not appear that the actions constituting trademark infringement occurred in Connecticut. *See, e.g.*, *MAK Marketing, Inc. v. Kalapos*, 620 F. Supp.2d 295, 310 (D. Conn. 2009) ("The locus of operative facts is an important factor to be considered in deciding where a case should be tried."); *A Slice of Pie Productions, LLC v. Wayans Bros. Entertainment*, 392 F. Supp.2d 297, 306 (D. Conn. 2005) ("The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue."). Rather, World's Senior Vice President Powell has declared that no communications containing the WorldCare brand name are made once an insurance policy has been issued. The three WorldCARE branded policies outstanding to Connecticut residents were not marketed or sold in Connecticut. They were issued prior to the policyholders' move to Connecticut. Therefore, according to Powell's sworn affidavit, there has been no use of the WorldCARE brand with respect to the policyholders residing in Connecticut since their arrival in the state (*i.e.*, it is unlikely that any actions occurring within the

state of Connecticut will bear on plaintiff's claim). [52]

In addition to the factors analyzed above, the Court finds that transfer of this action will promote judicial efficiency, allowing the plaintiff to proceed with its claim without re-filing its action and pleadings. *See, e.g.*, *MasterCard Int'l, Inc. v. Lexcel Solutions, Inc*., No. 03 Civ.7157, 2004 WL 1368299, at * 8 (S.D.N.Y. June 16, 2004). Transfer may thus " prevent the waste of time, energy and money and . . . protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *see also Spherion Corp. v. Cincinnati Financial Corp*., 183 F. Supp. 2d 1052, 1059-60 (N.D. Ill. 2002) (transfer when venue is improper is in the interest of justice because dismissal of action that may be brought in another district is "time-consuming" and may be "justice-defeating").

In sum, the overall balance of interests weighs in favor of transferring the case to the District of Nebraska. Personal jurisdiction over World exists in Nebraska; and venue is proper there. The case shall thus be transferred to the United States District Court for the District of Nebraska.

---

[52]With respect to the sixth factor, the availability of process to compel the attendance of unwilling witnesses, the Court notes that both World and WorldCare consider the issue to be neutral in that no non-party witnesses have been identified. Doc. #22, p. 12, para. 2; Doc. #29, p. 9, para. 2. The Court notes, however, that Nebraska is more than 100 miles away. *See* Fed. R. Civ. P. 45 (b)(2) (B) (allowing service of a subpoena at any place outside the district of the issuing court "but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection"). Should there be a problem securing the attendance of a non-party Nebraska witness (*e.g.*, an insurance policyholder or ex-employee of World), the Court would not be able summon that witness to testify in Connecticut. *See Jones v. Walgreen Co.*, 463 F. Supp.2d 267, 278 (D. Conn.2006) (transfer favored where "there will be a number of relevant witnesses who are beyond the subpoena power of the court and may not be willing to testify voluntarily"); *Adair v. Microfield Graphics, Inc*., No. 00 Civ. 0629(MBM), 2000 WL 1716340, at *3 (S.D.N.Y. Nov. 16, 2000) (finding availability of process to compel testimony of unwilling witnesses favors transfer).

## IV.    **CONCLUSION**

I hold that on the basis of the record before this Court, WorldCare has failed to satisfy its burden to demonstrate that this Court may exercise  personal jurisdiction over defendant World. Although WorldCare's service of process upon the Insurance Commissioner of Connecticut was proper service, World's scant total contacts with the forum of Connecticut fail to satisfy the "minimum contacts" test of the due process clause.  When combined with an analysis of the Supreme Court's reasonableness factors in *Asahi*, the paucity of these contacts compels the conclusion that this Court's exercise of personal jurisdiction over World would offend the "traditional notions of fair play and substantial justice" under *International Shoe*.

Rather than granting World's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #21), however, this Court concludes that, "in the interest of justice," pursuant to 28 U.S.C. § 1406(a),  the case should be transferred to the United States District Court for the District of Nebraska.  In addition to curing the problem of personal jurisdiction, key factors such as convenience and availability of the known witnesses, location of the relevant documents, and locus of the operative facts warrant transfer to Nebraska, where venue is proper.   Pursuant to 28 U.S.C. § 1406(a), the Court hereby DENIES World's Motion to Dismiss (Doc. #21) and GRANTS World's alternative Motion to Transfer (Doc. #21).[53]  Accordingly, the Clerk is instructed to transfer the case

---

[53]Transfer  is granted pursuant to 28 U.S.C. § 1406(a), as opposed to § 1404 (a), because this Court lacks personal jurisdiction over World, rendering venue in this district improper.

to the United States District Court for the District of Nebraska.

It is SO ORDERED.

Dated: New Haven, Connecticut
February 28, 2011


_/s/ Charles S. Haight, Jr._
Charles S. Haight, Jr.
Senior United States District Judge